UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES GREGORY REED,

    Petitioner,

v.                                      Case No. 3:07-cv-700-J-12JRK

WALTER A. MCNEIL, etc.; et al.,

    Respondents.
_____

## ORDER

### I. Status

Petitioner James Gregory Reed, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on July 30, 2007 (according to the mailbox rule). Petitioner is represented by counsel. See Doc. #28.

Petitioner challenges a 2002 state court (Duval County, Florida) judgment of conviction for murder and robbery on four grounds: (1) the ineffective assistance of trial counsel due to an actual conflict of interest; (2) the prosecutor knowingly used false testimony; (3) the conviction is based on a coerced confession, statements and admissions; and (4) the trial court erred in granting the state's first motion in limine, which precluded the defense from presenting evidence regarding the failure to charge Melvin "Ossi" Pack and Ruth Ann Robertson, since

the state opened the door to such evidence, thereby depriving Petitioner of his rights to present a defense and to due process of law, as secured by the Sixth and Fourteenth Amendments to the United States Constitution.

On March 31, 2008, Respondents filed an Answer in Response to Order to Show Cause (Doc. #19) (hereinafter Response). The Exhibits to Response to Petition for Writ of Habeas Corpus (Doc. #20) were filed on April 2, 2008.[1] Petitioner's Reply to State's Answer (Doc. #30) (hereinafter Reply) was filed on December 10, 2008, by counsel.[2] See the Court's Order (Doc. #11).

## II. Evidentiary Hearing

The pertinent facts of the case are fully developed in the record before the Court. Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999). No evidentiary proceedings are required in this Court. See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

---

[1] The Court hereinafter refers to Respondents' Exhibits (Doc. #20), filed April 2, 2008, as "Ex."

[2] The Reply focuses on ground four.

2

## III. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed *de novo*, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.
>
> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application'

3

> inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[3] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, No. 07-11360, 2010 WL 6761, at *3-*4 (11th Cir. Jan. 4, 2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

---

[3] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## IV. Timeliness

Respondents concede that the Petition is timely. Response at 4-6.

## V. Procedural Default

There are two prerequisites to a federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." Upshaw v. Singletary, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted).

"It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'" Mincey v. Head, 206 F.3d 1106, 1135-36 (11th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991), and McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992)), cert. denied, 532 U.S. 926 (2001).

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540

U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

> For [a petitioner] to show cause, the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citation omitted), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

## VI. Findings of Fact and Conclusions of Law

Respondents assert that grounds one, two and three of the Petition are procedurally defaulted. Response at 7-11, 12-14, 16-18. These grounds were presented in Petitioner's Rule 3.850 motion, Ex. P at 1-94, however, the state circuit court found the claims to be barred under state procedural rules. Id. at 95-167. The First District Court of Appeal affirmed per curiam. Ex. R. Rehearing was denied, Ex. S, and the mandate issued on July 13, 2007. Response at 4.

The circuit court, in its Order Denying Defendant's Motion for Post Conviction Relief, said:

> Initially, this Court notes that the Defendant's instant Motion is untimely, in that it was filed more than two years after his conviction became final. Huff v. State, 569 So.2d 1247 (Fla. 1990); Delap v. State, 513 So.2d 1050 (Fla. 1987); Gust v. State, 535 So.2d 642 (Fla. 1st DCA 1988). Further, the Defendant's instant arguments could or should have been raised on direct appeal, and are thus procedurally barred. Harvey v. Dugger, 656 So.2d 1253 (Fla. 1995); Cherry v. State, 659 So.2d 1069 (Fla. 1995).
>
> The Defendant seeks to circumvent these procedural bars by alleging newly discovered evidence. In order for evidence to be considered newly discovered, it must pass a two-prong test set forth by the Florida Supreme Court. First, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known [of it] by the use of diligence." Jones v. State, 709 So.2d 512 (Fla. 1998) (quoting Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla. 1994.))

Secondly, the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial. Jones v. State, 591 So.2d 911 (Fla. 1992). In the instant Motion, the evidence that the Defendant presents as newly discovered consists of four affidavits submitted by three individuals who were friends of the Defendant at the time of the robbery/murder and at the time of his trial. (Exhibits "C," "D," "E," and "F.") As explained more fully below, the matters averred to in those affidavits do not pass the first or second prongs of the test set forth by the Florida Supreme Court in Jones, 709 So.2d at 521.

The Defendant first asserts that his trial counsel, Refik Eler, harbored negative, personal feelings toward a potential defense witness, Anna McAlpin, and for that reason failed to use Ms. McAlpin's testimony at trial. The Defendant claims he did not become aware of this information until an affidavit of Sharon Armstrong came into his possession in August 2004. (Exhibit "C.") The Defendant further claims that Ms. McAlpin's testimony would have rebutted that of the State's witness Edward Wiseman, who testified that the Defendant said he was going to assist federal authorities in "setting up" the victim. Upon review of Ms. Armstrong's affidavit, this Court finds that it does not meet either the first or second prong of the test set forth in Jones, supra. As to the first prong, both Ms. McAlpin and Ms. Armstrong were known to the Defendant prior to and during trial, and nothing prevented the information contained in Ms. Armstrong's affidavit from being made known to the Defendant until a year after his conviction became final. In fact, on page nine (9) of the instant Motion the Defendant admits that prior to trial he knew of Ms. McAlpin's attempts to contact defense counsel and urged Ms. Armstrong to contact defense

counsel about taking Ms. McAlpin's deposition.[4]

As to the second prong, even if it were true that defense counsel held negative feelings toward Ms. McAlpin, it is dubious at best that the information contained in Ms. McAlpin's proposed testimony would have had any impact on the verdict in this case, given the overwhelming evidence of the Defendant's guilt. Nothing in her proposed testimony regarding whether or not the Defendant said he was going to "set up" the victim with federal authorities negates the fact that the Defendant was at the scene and participated with two other people in a robbery of the victim during which the victim was murdered. Defendant's first argument is therefore wholly without merit.

In his second argument, the Defendant asserts that the State knowingly used perjured testimony from Jerry Thornton. Defendant argues that the nature of Mr. Thornton's criminal history was misconstrued at trial to show Mr. Thornton in a better light, but that Defendant was [sic] did not become aware of this "newly discovered evidence" until March 2004, when Defendant came into possession of public records pertaining to Mr. Thornton's criminal background. Defendant also takes issue with Mr. Thornton having received what the Defendant believes to be preferential treatment by authorities in exchange for his testimony against the Defendant. This argument again fails the first and second

---

[4] Petitioner's claim is particularly weak in light of the fact that defense counsel subpoenaed Ms. McAlpin to testify at trial, but ultimately chose, with the agreement of his client, not to call Ms. McAlpin. Ex. B at 739. Petitioner assured the court that he and his attorney thoroughly discussed what his witnesses might say, that the testimony had already been covered in the state's case in chief, and it was Petitioner's decision and his counsel's decision not to call the subpoenaed witnesses. Id. at 740-41. Petitioner elected to testify at trial without calling the subpoenaed witnesses. Id. at 741-46.

prongs of <u>Jones</u>, *supra*. First, Mr. Thornton's criminal history is and was a matter of public record, and through diligence Defendant or his counsel could have discovered it prior to trial. By definition, therefore, that information is not newly discovered. As to the second prong, it is again very doubtful that the information of which Defendant complains would produce an acquittal on retrial. Mr. Thornton was, in fact, thoroughly questioned about his criminal background at trial. Additionally, his testimony against the Defendant was cumulative of that presented by witnesses [sic] John J. Adams, who testified that the Defendant spoke to him about the Defendant's own involvement in the subject murder. (Exhibit "G," pages 689-734.) Therefore, the Defendant's second argument is without merit.

In his third argument, the Defendant states that his confession, statements, and admissions were coerced by Jacksonville's Sheriff's Office Detective Richard Lemmon [sic]. The Defendant sets forth in painstaking detail the facts surrounding his arrest in Maryland, where he had fled after the victim's murder. In essence, the Defendant claims that he was lied to by Detective Lemmon [sic], who told Defendant that he was needed as a witness, rather than a suspect, in this case, and that he would be freed if he gave the police information that enabled them to prosecute the other two participants in the robbery/murder. The Defendant additionally takes issue with having been secretly videotaped and audiotaped by Maryland police who, with the cooperation of the Defendant's girlfriend, Noreen Vallandingham, attempted to have the Defendant implicate himself on tape.

As with the Defendant's previous arguments, this claim does not meet either prong of the <u>Jones</u> test. With regard to the first prong, the Defendant was aware of the facts surrounding his arrest, interrogation, and statements to police prior to trial. By

10

> definition, this information on which the
> Defendant bases his allegations of coercion is
> not newly discovered. Regarding the second
> prong, it is again highly doubtful that this
> alleged evidence would have produced an
> acquittal on retrial. The Defendant admits in
> his Motion: (1) that he was taken into
> custody in Maryland by Maryland officers; (2)
> that he was then approached by JSO Detectives
> Lemmon [sic] and Nelson; (3) that he was told
> by the JSO Detectives that he could demand or
> waive an extradition hearing; (4) that the JSO
> Detectives advised him of his right to counsel
> and he waived that right; and (5) that he gave
> a written, signed statement to JSO Detectives
> regarding the facts of the subject
> robbery/murder before coming back to
> Jacksonville. (Motion, pages 37-40.) This
> Court can find nothing illegal, coercive, or
> suspect about the Defendant's arrest,
> interrogation, or statements given to the
> Detectives, notwithstanding the Affidavits
> submitted by the Defendant's girlfriend.
> (Exhibits "E," "F.") The Defendant's third
> claim is therefore without merit.

Ex. P at 95-99.

Based on the above, not only did the trial court find that the Rule 3.850 motion was untimely,[5] but also that Petitioner was not entitled to the exception to the two-year limitation period. See Response at 8-10. This decision was affirmed on appeal of the denial of the Rule 3.850 motion. Thus, grounds one, two and three are procedurally defaulted. Here, Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice. Therefore,

---

[5] Additionally, the trial court found the claims could or should have been raised on direct appeal, and were procedurally barred. Ex. P at 95-96.

11

this Court will apply the state procedural bar to grounds one, two and three, and will not reach these claims on their merits.

In the fourth ground of the Petition, Petitioner relies on the right to due process of law secured by the United States Constitution as well as a Sixth Amendment argument to present a defense. Respondents assert that Petitioner has procedurally defaulted ground four[6] of the Petition based on the fact that Petitioner did not alert the state court to the federal nature of this ground. Response at 19-21. Respondents contend Petitioner did not provide the state courts with a fair opportunity to address the constitutional claim he now presents to this Court. As a result, they argue that Petitioner is barred from raising the federal constitutional claim at this juncture.

The Supreme Court of the United States, in addressing the question of exhaustion, explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per

---

[6] The fourth ground of the Petition asserts: the trial court erred in granting the state's first motion in limine, which precluded the defense from presenting evidence regarding the failure to charge Melvin "Ossi" Pack and Ruth Ann Robertson, since the state opened the door to such evidence, thereby depriving Petitioner of his rights to present a defense and to due process of law, as secured by the Sixth and Fourteenth Amendments to the United States Constitution. Petition at 10-10A.

>curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (citation omitted)). To provide the State with the necessary "opportunity," **the prisoner must "fairly present" his claim in each appropriate state court** (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added). In Baldwin, the Supreme Court recognized a variety of ways a federal constitutional issue could be fairly presented to the state court: by citing the federal source of law, by citing a case deciding the claim on federal grounds, or by labeling the claim "federal." Id. at 32.

Here, the appellate brief adequately supplied the aforementioned federal or constitutional references. Upon review of Petitioner's direct appeal brief, the Court finds Petitioner adequately raised a federal claim under the Due Process Clause to the Fourteenth Amendment and pursuant to the Sixth Amendment, essentially alleging the denial of a fair trial by not being able to present an adequate defense. Ex. C at i, 32, 34. Thus, the federal claim was fairly presented to the state courts, and Petitioner adequately exhausted the federal nature of his claim under the Fourteenth and Sixth Amendments. Ground four is not procedurally defaulted.

After considering ground four, Petitioner is not entitled to habeas relief. The decisions of the trial court and the First District Court of Appeal are entitled to deference under AEDPA.[7] The adjudication of the state trial and appellate courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground four because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In the alternative, the Court finds the claim to be without merit. At trial, the prosecutor presented an opening statement which emphasized the fact that Petitioner, along with two partners, also referred to as principals, robbed and murdered the victim. Ex. B at 260-81. In the opening statement for the defense, defense counsel asserted that "Ossi and Ruth Ann conspired[,]" id. at 284, not the Defendant. In addition, defense counsel said: "I believe the evidence is going to show that Melvin Pack [Ossi] is not even charged with this murder." Id. at 282-83. The prosecutor notified the court that it would be filing a motion in limine asserting that

---

[7] On direct appeal, the First District Court of Appeal affirmed per curiam in an Opinion filed May 30, 2003. Ex. E. The mandate issued on June 17, 2003. Ex. F.

whether or not a charge has been levied against co-defendants has no relevance to the guilt or innocence of the Defendant. Id. at 291-92.

The State's First Motion in Limine was filed on May 7, 2002, asserting that the state's failure to arrest or bring charges against Melvin Pack [Ossi] and Ruth Ann Robertson is highly prejudicial to the state. Ex. A at 42. The state argued its position to the court, asserting the arrest or charging of others is irrelevant to the guilt or innocence of the Defendant, and the defense responded. Ex. B at 486-89. The court granted the motion in limine finding: "I think it's fair game for everybody to argue what everybody might have done, but whether somebody has been charged or not charged is not an appropriate avenue for you to present the defense in this case." Id. at 489. See Ex. A at 43. The court explained that the defense could argue that Mr. Pack and Mrs. Robertson did it all and Petitioner did not participate. Ex. B at 489-90.

Of course, Petitioner's defense was that Mr. Pack and Mrs. Robertson were responsible for the robbery and murder and he was not involved. Petitioner actually took the stand and testified that Mr. Pack and Mrs. Robertson committed the crimes and he was not a participant. Petitioner was able to present this defense and was not restricted by the trial court in doing so. Here, Petitioner had "a meaningful opportunity to present a complete

defense." Holmes v. South Carolina, 547 U.S. 319, 331 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). Whether or not the co-defendants had actually been charged with the crime was not relevant to the guilt or innocence of Petitioner.[8] Petitioner is not entitled to habeas relief on ground four.

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

## VII. Certificate of Appealability

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed

---

[8] It should be noted that Mr. Pack and Mrs. Robertson did not testify at trial; therefore, there was no issue that they had an interest in testifying against Petitioner or some other extraneous concern involving some benefit to them and some detriment to Petitioner. See Wilson v. State, 666 So.2d 979, 891 (Fla. 1st DCA 1996) (Booth, J., dissenting).

16

further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. If Petitioner appeals the denial of the Petition, **the Court denies a certificate of appealability.** Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

2. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3. The **Clerk of the Court** shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 18TH. day of February, 2010.

*Howell W. Melton*
UNITED STATES DISTRICT JUDGE


sa 2/6
c:
D. Gray Thomas, Esquire
William J. Sheppard, Esquire
Ass't A.G. (Winokur)